Request of the House of Representatives
No. 86-122

OPINION OF THE JUSTICES

May 1, 1986

18

On March 18, 1986, the House of Representatives adopted House Resolution No. 19 requesting an opinion of the justices:

"Whereas, HB 236, an act relative to referees, auditors, and marital masters has been introduced and has been amended by the judiciary committee of the house of representatives and is now pending before the house of representatives for consideration; and

"Whereas, HB 236 as amended provides for the appointment of superior court marital magistrates to replace the present marital master system; and

"Whereas, Part II, Article 76 of the New Hampshire Constitution allows the general court latitude in establishing court procedures relative to divorce matters; and

"Whereas, a question has arisen as to the constitutionality of HB 236 as amended in light of Part II, Article 46 of the New Hampshire Constitution; now, therefore, be it

"Resolved by the House of Representatives:

"That the Justices of the Supreme Court are respectfully requested to give their opinion and answer the following questions of law:

"I. Are presently sitting marital masters judicial officers under Part II, Article 46 of the New Hampshire Constitution?

"II. Would marital magistrates as proposed in HB 236 as amended be judicial officers under Part II, Article 46 of the New Hampshire Constitution?

"III. If the answer to the second question is yes, is the appointment provision of HB 236 as amended constitutional under Part II, Article 76 of the New Hampshire Constitution?

"IV. In all respects other than those to which the preceding questions relate, is HB 236 as amended constitutional on its face?

"V. If HB 236 as amended is unconstitutional in any respect, would the deletion or amendment of any provision cure the constitutional defect or defects?

"That the clerk of the house of representatives transmit copies of this resolution and copies of HB 236 and the proposed amendment to the justices of the New Hampshire Supreme Court."

The court received the resolution on March 20, 1986, and invited interested legislators, other officials and citizens to file memoranda on the subject by April 7, 1986.

The undersigned justices respectfully return the following reply:

*To The House of Representatives:*

I. Presently appointed marital masters of the superior court are not judicial officers within the meaning of part II, article 46 (Supp. 1985) of the Constitution of New Hampshire, and we accordingly answer no to your first question.

A necessary characteristic of a judicial officer is the authority to render judgment to determine issues that are properly raised before the judicial branch. *See The State of Rhode Island v. The State of Massachusetts,* 37 U.S. (12 Pet.) 657, 718 (1838); N.H. CONST. pt. I, art. 37, pt. II, art. 72-a. That final authority may be exercised only by an officer appointed in accordance with the State Constitution and invested with the constitutional incidents of judicial office. Thus, a judicial officer within the meaning of part II, article 46 (Supp. 1985) must, by definition, be "nominated and appointed by the governor and council," *id.,* and must be commissioned to hold office during good behavior, N.H. CONST. pt. II, art.

73, except where the constitution otherwise provides. *See* N.H. CONST. pt. II, art. 75 (five-year term for justices of the peace); *see also Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982).

Marital and other masters are not so appointed, tenured or empowered. *See generally* R. WIEBUSCH, 5 NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE chap. 39 (1984). They are appointed by the superior court, and although their appointments are made and reviewed on a periodic basis, they have no tenure and are removable by the court at will. At most, such masters are authorized to make recommendations, which, though normally approved, have no binding force upon the court. *But see Cornforth v. Cornforth*, 123 N.H. 61, 455 A.2d 1049 (1983) (in absence of record, court may not alter master's recommended award without hearing or presentation of evidence).

■ II. The answer to the preceding question indicates that marital magistrates appointed in accordance with the provisions of HB 236 would not be judicial officers within the meaning of part II, article 46 (Supp. 1985), and we answer no to your second question.

The terms of section 1 of the bill as amended would invest the superior court with the same authority and discretion to appoint marital magistrates that the court now exercises in appointing marital masters, subject only to the provision that the number of marital magistrates would be limited to eight. By definition, such a magistrate would not be a judicial officer as part II, article 46 (Supp. 1985) uses that term. We discuss the implications of this answer in response to your fourth and fifth questions.

III. Your third question seeks a response only if the answer to the second question is affirmative, and we therefore return no answer.

■ IV. We infer that your fourth question reflects concern about the constitutional authority of marital magistrates to exercise the authority that the act would purport to confer upon them. We respectfully limit our consideration to that issue, and we advise that marital magistrates appointed in accordance with HB 236 could not constitutionally exercise the authority that would be provided to them by the provisions of the bill in its presently amended form. We therefore answer no to your fourth question.

Three separate provisions of HB 236 would purport to provide powers to marital magistrates beyond the traditional authority exercised by marital and other masters. Section 1 would authorize marital magistrates to "exercise the powers of the court" on matters within their subject matter jurisdiction. Section 5 would obligate a

master to "give his decision" in a certain form upon request, thus suggesting that the magistrate would have the power to decide, rather than merely to recommend. And section 7 would empower a marital magistrate to "make orders and impose penalties" for the purposes of enforcing summonses of boards and officials lacking such enforcement authority.

■ There is no question, therefore, that marital magistrates under HB 236 would ostensibly be granted the authority of judicial officers, even though they would not be appointed or tenured as such. This would clearly violate part II, article 46 (Supp. 1985), and the orders and decrees of such magistrates would have no legal effect, without approval and adoption by a superior court justice.

Since the preamble to your questions mentions part II, article 76 of the State Constitution, we should note specifically that the foregoing answer is consistent with that article. Part II, article 76 provides in part that "All causes of marriage, divorce and alimony . . . shall be heard and tried by the superior court until the legislature shall by law make other provision."

Part II, article 76 was included in the Constitution of 1784 in order to invest the judicial branch with jurisdiction over separation and divorce. *Clough v. Clough*, 80 N.H. 462, 466, 119 A. 327, 329 (1922). In England, prior to our Revolution, the civil courts of common law and equity possessed no marital jurisdiction; what we would now regard as jurisdiction over separation and annulment was vested in the ecclesiastical courts, 1 W. HOLDWORTH'S A HISTORY OF ENGLISH LAW 621 (3d ed. 1922), and jurisdiction to grant divorce following a valid marriage resided in Parliament. *Id.* at 623. *See* CHASE'S BLACKSTONE 141–42 (4th ed. 1914). During New Hampshire's provincial and revolutionary periods preceding the adoption of the 1784 Constitution, the legislature granted divorces. *See Clough v. Clough, supra* at 466, 119 A. at 329 and cases there cited.

■ As a consequence, no judicial jurisdiction over marital cases would have been implied merely by the recognition of the judicial power under part I, article 37, or by the provision for the appointment of judicial officers under part II, article 46 (Supp. 1985). Part II, article 76 did confer such judicial power, however, as this court recognized in *Clark v. Clark*, 10 N.H. 380, 385 (1839); *see Clough v. Clough, supra* at 466, 119 A. at 329. It follows that the legislature may not constitutionally empower any but a judicial officer to exercise marital jurisdiction, although the legislature has authority to determine which judicial officers should exercise that jurisdiction, N.H. CONST. pt. II, art. 76, or to create special judicial positions for that purpose, N.H. CONST. pt. II, arts. 4 and 72-a.

V. Your fifth question asks us to identify any amendments that would cure the constitutional defects noted in response to the fourth question. We answer by stating that the legislature has a choice of amendments to the present HB 236 that would cure the constitutional defect of granting judicial power to non-judicial officers. Under one alternative, an amendment could provide for the appointment and tenure of marital magistrates during good behavior in the manner generally necessary for judicial officers, as we have described above. We note that the appointment of a justice of the peace as a marital magistrate would probably not solve the constitutional problem, because the civil jurisdiction of such justices is specifically limited by N.H. CONST. pt. II, art. 77. Another alternative would be an amendment that would restrict the powers of marital magistrates so that they would function as marital masters now do, in an administrative but essentially advisory capacity to judicial officers, who would retain plenary authority over the appointment and assignment of the magistrates and the disposition of their recommendations. Our answers should not be taken as implying support for either of these alternatives, however, or as suggesting that we believe that the second alternative would be practical, in view of section 1 of the bill.

JOHN W. KING
DAVID A. BROCK
WILLIAM F. BATCHELDER
DAVID H. SOUTER
WILLIAM R. JOHNSON

May 1, 1986

Bruce P. Witte filed a memorandum in support of affirmative answers to questions I, II and III, and a negative answer to question V.